IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| MERLE T. RUTLEDGE, JR., | ) | |
| | ) | 4:10CV00035 |
| Plaintiff | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| TOWN OF CHATHAM, ET AL. | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants | ) | |

Before me are Defendant Officer Nathan Roach's Motion to Dismiss and Plaintiff Merle Rutledge, Jr.'s Motion to Amend. Mot. to Dismiss, Sept. 29. 2010, ECF No. 33; Mot. to Amend, Oct. 27, 2010, ECF No. 52. A Roseboro notice was mailed to the pro se Plaintiff on September 30th, 2010. Roseboro Notice, Sept. 30, 2010, ECF No. 39. The Court conducted a hearing on these two motions on November 16th, 2010. For the reasons set out below, the Plaintiff's Motion to Amend is **DENIED** and the Defendant's Motion to Dismiss is **GRANTED**. The dismissal is **WITH PREJUDICE**.

## FACTS

The facts that follow are set forth in the light most favorable to the Plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (when considering a motion to dismiss, the Court must take the facts in the light most favorable to the plaintiff). On August 3rd, 2010, the Plaintiff was walking on a sidewalk across from a supermarket and a gas station in Chatham when Officer Roach stopped and exited his police cruiser to initiate an encounter with the Plaintiff. Compl. 2, Aug. 10, 2010, ECF No. 3. Officer Roach was in uniform and displaying his badge of authority at the time. Upon exiting his cruiser, Officer Roach approached the Plaintiff on foot and told the Plaintiff to stop, which the

1

Plaintiff did. Id. Understandably worried, the Plaintiff asked Officer Roach whether he was in trouble, to which Officer Roach responded that "[p]eople want to know who [you are]." Id. Officer Roach then asked for the Plaintiff's identification, prompting the Plaintiff to produce his driver's license. Id. Officer Roach took the Plaintiff's license and checked to see if there were any outstanding warrants on the Plaintiff. Id. When he was finished, Officer Roach returned the Plaintiff's license and asked him about where he lived and where he was from. Id. After Officer Roach finished asking the Plaintiff questions, the Plaintiff asked for Officer Roach's badge number, to which Officer Roach replied "it's no need to go that far with it. It was just a simple matter of inquiry." Id. At that point Officer Roach returned to his cruiser and left. Id. The Plaintiff then filed a complaint with the Chatham Police Department, which prompted Chief Marvin Wright to hold a meeting with both Officer Roach and the Plaintiff. Id. at 3. The Plaintiff does not mention the results of that meeting, except to point out that Chief Wright denied that the Chatham Police Department stops people for no reason and that Officer Roach was unapologetic. Id. at 3-4.

Based on these facts, the Plaintiff originally alleged that his Fourth Amendment right to be free from unlawful seizures of his person had been violated. Id. at 2. On September 29th, 2010, the Defendant filed a Motion to Dismiss and a Brief in Support, in which he asserted that he is entitled to qualified immunity. Mot. to Dismiss; Br. in Supp. of the Mot. to Dismiss 3, Sept. 29, 2010, ECF No. 34. On October 27th, 2010, twenty-eight days after the Defendant filed his Motion to Dismiss, the Plaintiff filed a Brief in Opposition to the Motion to Dismiss. Br. in Opp'n to Mot. to Dismiss, Oct. 27, 2010, ECF No. 51. Five days later, on November 1st, 2010, the Defendant filed a Reply Brief in

which he pointed out that the Plaintiff overran his deadline to file his Brief in Opposition by fourteen days. Reply to Br. in Opp'n to Mot. to Dismiss 1-2, Nov. 1, 2010, ECF No. 53.

On October 27th, 2010, the Plaintiff also made a Motion to Amend and offered a Proposed Amendment. Mot. to Amend. The Plaintiff sought to add three additional claims arising from his August 3rd encounter with Officer Roach. Those three claims are gross negligence, illegal seizure of his property, and a state law tort claim for invasion of the right to privacy. Proposed Am. Compl. 1-2, Oct. 27, 2010, ECF No. 52-1. The property the Plaintiff claims was illegally seized was his driver's license. Id. The Defendant responded to the Plaintiff's Motion to Amend on November 1st, contending that the Plaintiff's Motion to Amend was a rambling, unintelligible copy-and-paste project. Def.'s Br. in Opp'n to Pl.'s Mot. to Amend 1, Nov. 1, 2010, ECF No. 52. On November 16th, 2010, the Court held a hearing on both the Defendant's Motion to Dismiss and the Plaintiff's Motion to Amend.

## **APPLICABLE LAW**

Dismissal pursuant to a motion to dismiss is appropriate where the complaint fails to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). In considering the motion, the Court must take the factual allegations in the Plaintiff's pleadings in the light most favorable to him. Erickson, 551 U.S. at 93-94. While the Court does not question the truth of the Plaintiff's allegations of fact on a motion to dismiss, the Court is under no obligation to accept as true any legal conclusions he has offered. Iqbal, 129 S.Ct. at 1949. The Court also recognizes that there is a strong preference for resolving matters of qualified immunity as early on in litigation as

possible. See Sandcrest Outpatient Services, P.A. v. Cumberland County Hospital System, 853 F.2d 1139, 1148 fn.9 (4th Cir. 1988) (noting that "a court should strive to resolve the immunity issue as early as possible"); Chappell v. City of Cleveland, 585 F.3d 901, 907 (6th Cir. 2009) (same). This preference for early resolution of immunity issues stems from the fact that "qualified immunity is an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (internal citing references and quotation marks omitted).

## ANALYSIS FOR THE MOTION TO DISMISS

I. The Court Cannot Consider the Plaintiff's Brief in Opposition

The Plaintiff's Brief in Opposition to the Motion to Dismiss was filed twenty-eight days after the Defendant filed his Motion to Dismiss. Under the Local Rules applicable in this Court, "the opposing party must file a responsive brief…within 14 days after service." W.D.Va. Civ. R. 11(c)(1). Furthermore, pursuant to the Scheduling Order entered in this case, if an opposition brief is not filed within fourteen days of the service date on the movant's brief, "**EXCEPT FOR GOOD CAUSE SHOWN…IT WILL BE DEEMED THAT THE MOTION IS WELL TAKEN**." Pre-Trial Scheduling Order 1-2, Sept. 30, 2010, ECF No. 44 (emphasis and capital letters in the original). Although courts traditionally give pro se litigants more leeway than represented parties, that leeway is not unlimited and the Court cannot act as an advocate for litigants who proceed without counsel. Weller v. Dep't of Social Services, 901 F.2d 387, 390-91 (4th Cir. 1990) (Court cannot act as an advocate); Davis v. Bacigalupi, 711 F.Supp.2d 609, 615 (E.D.Va. 2010) (additional license given to pro se litigants is not unlimited). It has been held that the additional latitude given to those proceeding pro se must be tempered to require

compliance with procedural rules. McNeil v. U.S., 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); Davis, 711 F.Supp.2d at 615. Considering a brief filed fourteen days after the fourteen day deadline would give the Plaintiff in this case significantly more latitude than this Court can afford any litigant, whether represented or not.

II. The Legal Framework of Qualified Immunity and Police-Citizen Encounters

In his Brief in Support of the Motion to Dismiss, Officer Roach asserts that he is entitled to qualified immunity in this case. Br. in Supp. of the Mot. to Dismiss 3. In determining whether Officer Roach is entitled to qualified immunity, the Court's first step is to determine whether the facts presented by the Plaintiff show that Officer Roach's conduct violated a constitutional right. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004). If this first inquiry is answered in the affirmative, the next step is to decide whether the right violated was clearly established at the time. Id. Although the Fourth Circuit recently held that it is not necessary for the analysis to proceed in this order in every case, in this case it would be appropriate to do so because this Court's inquiry will end if it is determined that the Plaintiff has not alleged a constitutional violation. Compare Doe ex rel. Johnson v. South Carolina Dep't of Social Services, 597 F.3d 163, 169 (4th Cir. 2010) (which prong of the qualified immunity inquiry the Court chooses to address first is within that Court's discretion) with Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (threshold question is whether the government official violated a constitutional right because "[i]f no constitutional right would have been violated were

the allegations established, there is no necessity for further inquiries concerning qualified immunity").

For Fourth Amendment purposes, there are three types of police-citizen encounters. The first type is an arrest, for which the police must have probable cause. U.S. v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002) (citing Brown v. Illinois, 422 U.S. 590 (1984)). The second type is a Terry stop, for which the police must have reasonable suspicion. Terry v. Ohio, 392 U.S. 1 (1968). The third type is a consensual encounter between police and citizens, which require no objective justification whatsoever. Florida v. Bostick, 501 U.S. 429 (1991). See also Weaver, 282 F.3d at 309. It should be underscored that the meaning of "consensual" in common parlance is different from the meaning of that word in law. Under the Fourth Amendment, a seizure "occurs when, in view of the totality of the circumstances surrounding the 'stop,' a reasonable person would not feel free to leave or terminate the encounter." Weaver, 282 F.3d at 309. The U.S. Supreme Court has observed that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." I.N.S. v. Delgado, 466 U.S. 210, 216 (1984). There have been plenty of instances where a Plaintiff has been adamant that an encounter was not consensual, only to have the Court hold that, as a matter of law, it was. See, e.g., Weaver, 282 F.3d at 312-13; Monroe v. City of Charlottesville, 579 F.3d 380, 386-87 (4th Cir. 2009). This is because the test of whether a seizure has occurred is an objective, not subjective test. Weaver, 282 F.3d at 311-12. Factors considered by courts in determining whether there has been a seizure include "the time, place and purpose of the encounter, the words used by the officer, the officer's tone

of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen." Id. at 310.

III. Officer Roach Did Not "Seize" the Plaintiff

Many courts will also closely scrutinize situations where law enforcement retains someone's identification. See, e.g., Weaver, 282 F.3d at 310; U.S. v. Lopez, 443 F.3d 1280, 1285 (10th Cir. 2006); U.S. v. Foster, 376 F.3d 577, 584 (6th Cir. 2004). Some circuits have even held that an officer's retention of someone's identification beyond the time necessary to verify that person's identity is a seizure per se. Lopez, 443 F.3d at 1285; U.S. v. Jordan, 958 F.2d 1085, 1087 (D.C.Cir. 1992). The Fourth Circuit has explicitly declined to adopt this bright line rule, reasoning that in the context of a pedestrian stop a driver's license is "not necessary to…continuing onward." Weaver, 282 F.3d at 312. See also U.S. v. Drayton, 536 U.S. 194, 201 (2002) ("…for the most part per se rules are inappropriate in the Fourth Amendment context. The proper inquiry necessitates a consideration of all the circumstances surrounding the encounter.") (internal citing references and quotation marks omitted). The Plaintiff never requested that Officer Roach return his driver's license. Compare Weaver, 282 F.3d at 309 (encounter was consensual where police retained the plaintiff's license, but the plaintiff could have asked for his license back though never did) with Franklin v. Montgomery County, No. DKC 2005-0489, 2006 WL 2632298, at *9 (D.Md. Sept. 13, 2006) (originally consensual encounter was converted to a seizure when the police did not return the plaintiff's license despite his asking three or four times). Furthermore,

according to the Plaintiff, Officer Roach returned his license immediately after running it for warrants and only at that point began asking him questions. Compl. 2.

Aside from the fact that Officer Roach took the Plaintiff's driver's license and kept it long enough to run it for warrants, other indicia that the encounter was a seizure is lacking. The encounter at issue occurred in the middle of the day and in public. Id.; U.S. v. Adeyeye, 359 F.3d 457, 462 (7th Cir. 2004) (no seizure where, among other factors, officers knocked on the defendant's motel room door in the mid-day, which the defendant opened and spoke with the officers); U.S. v. Williams, 365 F.3d 399, 405 (5th Cir. 2004) (no seizure where, among other factors, officers asked a passenger to accompany them from one public area of a bus depot to another). At no time did Officer Roach block the Plaintiff's path or restrict his freedom of movement. McVay ex rel. Estate of McVay v. Sisters of Mercy Health System, 399 F.3d 904, 908 (8th Cir. 2005) (officer seized the decedent when he prevented the disoriented patient from leaving the hospital building); U.S. v. Richardson, 949 F.2d 851, 855 (6th Cir. 1991) (police seized the defendant when he was placed in the back of a police cruiser after refusing to give police permission to search). But see U.S. v. Smith, 423 F.3d 25, 30-31 (1st Cir. 2005) (no seizure despite the fact that two officers blocked any path to exit the defendant may have had because the officers had nowhere else to stand and made no other show of authority). Officer Roach's purpose was merely to identify the Plaintiff, not to accuse him of a crime or question him about any specific matter. Smith, 423 F.3d at 30 (no seizure where officers asked "general" questions of the defendant and did not attempt to question him about any crime or specific event); Foster, 376 F.3d at 584 (no seizure where an officer asked the defendant his name, what he was doing in the place the officer found him, and whether he

8

had identification with him) (citing Hiibel v. Sixth Judicial District Court of Nevada, 542 U.S. 177, 185-86 (2004)). Although Officer Roach did tell the Plaintiff to stop, the Plaintiff makes no allegation that Officer Roach otherwise behaved aggressively. Smith, 423 F.3d at 30 (no seizure where initial police question was in a "pretty aggressive" tone, but subsequent questions were sarcastic in nature); U.S. v. Brown, 401 F.3d 588, 594-95 (4th Cir. 2005) (seizure occurred where police ordered the defendant to place his hands on the car in front of him and the defendant complied). Finally, only Officer Roach approached the Plaintiff and there has been no assertion that the officer drew his weapon or touched the Plaintiff. Couden v. Duffy, 446 F.3d 483, 492-93 (3d Cir. 2006) (seizure occurred where officer approached the vehicle with his gun drawn); U.S. v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (seizure occurred where, among other factors, officer insisted that the defendant submit to a pat-down search). Outside of Officer Roach keeping the Plaintiff's license longer than necessary to identify him, but returning it promptly upon running it for warrants, the Plaintiff has offered no circumstances that might convert his encounter with Officer Roach into a seizure. As discussed above, the Fourth Circuit has held that retention of a license longer than necessary simply to identify someone does not necessarily mean a seizure has occurred. Weaver, 282 F.3d at 312 (while acknowledging that "a driver's license is one of the most valuable pieces of personal identification possessed by any citizen," the Fourth Circuit concluded that "[u]nder the totality of the circumstances, however, something more is required").

The Plaintiff asserts that he was seized because he would not have felt comfortable ignoring Officer Roach. Compl. 3. The question, however, is not whether *he* would have felt uncomfortable terminating the encounter, but rather whether *one*

9

would have felt uncomfortable terminating the encounter. The Plaintiff relies on his subjective sentiments, while the appellate courts have consistently relied on an objective analysis of the situation. See, e.g., Drayton, 536 U.S. at 200-01; U.S. v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005). An encounter between a police officer and a citizen does not become a seizure simply because it would have been awkward or uncomfortable for the citizen to walk away. Weaver, 282 F.3d at 311-12. Indeed, on the facts offered by the Plaintiff, "had [the Plaintiff] walked away from Officer [Roach], the officer would have been forced to end the encounter." Id. at 312. Instead, the Plaintiff avers that he dutifully stood by and awaited further instructions from Officer Roach because he was under the impression that anytime the police address a person, the person is not free to leave. Compl. 3 ("I was not free to leave as a stop tells you to stay and await permission to leave"). The Plaintiff's misunderstanding of the law cannot transform an otherwise consensual encounter into an illegal seizure. Drayton, 536 U.S. at 200-01 (objective standard); Delgado, 466 U.S. at 216 (there is no requirement that police tell citizens they are free not to respond in order to make an encounter consensual, even if the citizen is unaware that he may ignore the police in a given situation); Desyllas v. Bernstine, 351 F.3d 934, 940 (9th Cir. 2003) (no seizure where state officials never told the student he could leave, but the student never asked to leave).

IV. If the Plaintiff Was Technically "Seized," Officer Roach Is Entitled to Qualified Immunity

Although no Fourth Amendment violation appears to have occurred here, even if a violation did in fact happen, Officer Roach's actions hardly constitute a violation of clearly established rights. Cleveland, 372 F.3d at 301 (for second prong of qualified

10

immunity inquiry). The proper inquiry for determining whether a right is clearly established "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden, 446 F.3d at 492 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Indeed, the unclear nature of the extent of the right on facts such as these is demonstrated by the circuit split on the issue of whether retaining a person's identification is a per se Fourth Amendment violation. Compare Weaver, 282 F.3d at 312 (no per se seizure in the Fourth Circuit) with Lopez, 443 F.3d at 1285 (per se seizure in the Tenth Circuit). If the answer is not clear to the various federal appellate courts, then what better position would Officer Roach be in to know the answer? The Fourth Circuit has commented that "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Henry, 501 F.3d at 377 (internal citing references and quotation marks omitted). Officer Roach's actions could not be characterized as either.[1] Thus, even if there was a Fourth Amendment violation, Officer Roach would be entitled to qualified immunity on the facts offered by the Plaintiff. Dismissal with prejudice would therefore be appropriate in this case. See U.S. ex rel. Bledsoe v. Community Health Systems, Inc., 342 F.3d 634, 644 (6th Cir. 2003) (a plaintiff should be given an opportunity to amend before dismissal with prejudice **if a more carefully crafted complaint might state a claim**); Briggs v. Waters, 455 F.Supp.2d 508, 519 (E.D.Va. 2006) (it is appropriate to raise the qualified immunity defense in a motion to dismiss for failure to state a claim).

---

[1] The Court notes the Plaintiff's allegation that Officer Roach refused to give his badge number, which would go to whether this was a knowing Fourth Amendment violation. Compl. 2. Although it certainly was improper for Officer Roach to refuse to give his badge number and possibly a violation of the Chatham Police Department's General Orders, that fact is not dispositive in this case. See Virginia Department of Criminal Justice Services Proposed General Orders No. 1-9 (1999), available at http://www.dcjs.virginia.gov/cple/sampledirectives/manual/rtf/1-9.rtf. Even if the reason Officer Roach did not give his badge number was because he thought he illegally seized the Plaintiff, the totality of the circumstances shows that he did not in fact violate the Fourth Amendment.

## ANALYSIS FOR THE MOTION TO AMEND

I. The Plaintiff Is Not Entitled to Make an Amendment of Right

On October 27th, 2010, the Plaintiff filed a Motion to Amend and a Proposed Amendment. Mot. to Amend, Oct. 27, 2010, ECF No. 52. In the Proposed Amendment, which is based off the same set of facts as the original Complaint, the Plaintiff seeks to make additional claims for illegal seizure of his property, invasion of the right to privacy, and gross negligence. Proposed Am. Compl. 1, Oct. 27, 2010, ECF No. 52-1. Fed. R. Civ. P. 15(a)(1) provides, in relevant part, that "[a] party may amend its pleading once as a matter of course…before being served with a responsive pleading." It is well settled that a motion to dismiss, which is the only "response" filed to date in this case, does not count as a responsive pleading for the purposes of Fed. R. Civ. P. 15(a). Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010). There is no suggestion in the case law that Rule 15(a) means to say that a party may **move** to amend its pleading once as a matter of course, rather the rule is simply that "a party may **amend** its pleading once as a matter of course." Fed. R. Civ. P. 15(a) (emphasis added). The Plaintiff made a Motion to Amend as to the dismissed Defendants on October 6th, 2010, which the Court denied because the motion was unintelligible. Mot. for Recons. and to Amend, Oct. 6, 2010, ECF No. 45; Order Denying Motion, Oct. 8, 2010, ECF No. 46. Permitting an amendment where the Court and the Defendant would not be able to figure out the substance of the amendment would be inane. See LeeX v. Casey, 771 F.Supp. 725, 733 (E.D.Va. 1991) (prisoner-plaintiff proceeding pro se and in forma pauperis was not permitted to amend his pleading because the motion was vague, among other reasons). Since the Court denied

the Plaintiff's first Motion to Amend, the issue is whether the Court must grant his second Motion to Amend under Fed. R. Civ. P. 15(a), which is far more intelligible than his first.

The Court does not have to permit the Plaintiff's latest amendment. Although the Fourth Circuit very recently held that a plaintiff's aright to amend his complaint once under Fed. R. Civ. P. 15(a) is absolute, the situation presented in that case varied from the case at bar in significant respects. Galustian, 591 F.3d at 730. In Galustian, the Fourth Circuit considered a defamation case in which the plaintiff sought to amend his complaint, but the defendant opposed the amendment on futility grounds, pointing out to the court that the statute of limitations had run. Id. The Fourth Circuit held that the plaintiff had the right to amend, irrespective of whether the amendment would prove futile, because the right to amend under Fed. R. Civ. P. 15(a) is an absolute right. Id.

In Galustian, however, neither party was proceeding in forma pauperis under 28 U.S.C. § 1915. Id. at 726-27. This is a crucial distinction from the case at bar. 28 U.S.C. § 1915 allows the Court to exercise a great deal of control over the claim of a plaintiff proceeding in forma pauperis. At the outset, the Court has considerable discretion to determine whether or not it will even grant in forma pauperis status. 28 U.S.C. § 1915(a)(1); Leverett v. Bishop Furniture Co., Inc., 451 F.Supp. 289, 291 (D.S.C. 1978). Once granted, in forma pauperis status can be revoked. Wiideman v. Harper, 754 F.Supp. 808, 809 (D. Nev. 1990); Holsey v. Bass, 519 F.Supp. 395, 406 fn.24 (D.Md. 1981) (stressing that being given leave to proceed in forma pauperis is a privilege). Where in forma pauperis status is granted, the Court may **at any time** pre-screen and dismiss allegations that are frivolous or where the plaintiff fails to state a claim. 28

13

U.S.C. § 1915(e)(2)(B); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). 28 U.S.C. § 1915 allows the Court to block futile claims made by plaintiffs proceeding in forma pauperis at virtually every turn. Any justification for making amendments different is not apparent. See Brewster v. Dretke, 587 F.3d 764, 767-78 (5th Cir. 2009) (no error where District Court would not permit prisoner proceeding in forma pauperis to amend his complaint since it appeared the plaintiff had "already pleaded his 'best case'"); Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999) ("a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, **unless the court can rule out any possibility…that an amended complaint would succeed in stating a claim**") (emphasis added); Bartlett v. Harviel, No. 1:00CV241, 2002 WL 32574862, at *5 (M.D.N.C. Feb. 26, 2002) (pro se prisoner proceeding in forma pauperis was not entitled to make an amendment of right where the proposed amendment would be futile) (citing Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 420-21 (4th Cir. 1990)). But see Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) (District Court abused its discretion in denying a motion to amend where the in forma pauperis prisoner-plaintiff, who was proceeding pro se, was still able to make an amendment as a matter of course under Fed. R. Civ. P. 15(a)).

II. The Plaintiff's Proposed Amendments Are Futile

Having concluded that this Court may screen the Plaintiff's proposed amendments to determine whether they would be futile, it is not difficult to determine that the claims the Plaintiff proposes to add would fail to state a claim. Perkins v. U.S., 55 F.3d 910, 917 (4th Cir. 1995) (an amendment is futile where the proposed amendment would not

survive a motion to dismiss). The first claim the Plaintiff proposes to add, illegal seizure of his property, stems from Officer Roach asking the Plaintiff for his driver's license. Proposed Am. Compl. 1. The U.S. Supreme Court has been clear that "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." Hiibel, 542 U.S. at 185. The Plaintiff's unlawful seizure of property claim must therefore fail.

The Plaintiff also seeks to make an additional claim for gross negligence based on Officer Roach's unwillingness to apologize for the incident that prompted this lawsuit. Proposed Am. Compl. 1. According to the Plaintiff, the lack of an apology demonstrates a "total and utter disregard for the welfare of others…[a] complete I-don't-care-what-happens attitude." Id. Officer Roach clearly had no legal duty to apologize to the Plaintiff, which makes negligence of any sort inapplicable to this case. Evans v. Evans, 695 S.E.2d 173, 179 (Va. 2010) (setting out what a plaintiff must establish to show negligence and gross negligence).

Finally, the Plaintiff wishes to add a claim for invasion of the right to privacy, presumably for the "intrusive" questions Officer Roach asked of the Plaintiff. Proposed Am. Compl. 1. Just as with the gross negligence claim, the Plaintiff appears to be confused about what constitutes invasion of the right to privacy. The Second Restatement of Torts recognizes four branches within the state law tort of invasion of the right to privacy. Restatement (Second) of Torts § 652A (1977). Those four branches are false light, intrusion on the plaintiff's seclusion, publication of private facts, and unauthorized appropriation of the plaintiff's name or picture. Id. Although these four branches of privacy are recognized at common law in many states, Virginia has no

common law cause of action for invasion of the right to privacy. Compare Town & Country Properties, Inc. v. Riggins, 457 S.E.2d 356, 362 (Va. 1995) and Falwell v. Penthouse Intern., Ltd., 521 F.Supp. 1204, 1210 (W.D.Va. 1981) with Anderson v. Mergenhagen, 642 S.E.2d 105, 109 (Ga.App. 2007) and Hall v. Post, 372 S.E.2d 711, 713 (N.C. 1988). The Code of Virginia, however, does provide for a cause of action for the unauthorized use of a plaintiff's name or picture. Va. Code Ann. § 8.01-40; Town & Country Properties, Inc., 457 S.E.2d at 362. The Plaintiff has made no allegation that Officer Roach used the Plaintiff's likeness or name in connection with trade or advertising and has thus failed to state a privacy claim under § 8.01-40. Falwell, 521 F.Supp. at 1210.

## CONCLUSION

Officer Roach's actions did not result in the Plaintiff being "seized" for Fourth Amendment purposes. Because Officer Roach did not clearly seize the Plaintiff, even if a seizure technically occurred Officer Roach would be entitled to qualified immunity. The Defendant's Motion to Dismiss is therefore **GRANTED**. The dismissal is **WITH PREJUDICE** because a more carefully crafted Complaint would nonetheless fail to state a claim on the facts offered. Finally, the Plaintiff's Motion to Amend is **DENIED** on grounds of futility.

Entered this 18th day of November, 2010.

s/Jackson L. Kiser
Senior United States District Judge